IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DANIEL RUSSO,           )
                        )
        Plaintiff,      )
                        )
   v.                   )   No. 02 C 7381
                        )
BASE-LINE INCORPORATED and )
BASE-LINE II, INCORPORATED, )
                        )
        Defendant.      )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Daniel M. Russo's ("Russo") motion for summary judgment and on Defendant Base-Line Incorporated's and Defendant Base-Line II Incorporated's (collectively referred to as "Base-Line") motion for summary judgment. For the reasons stated below, we grant Russo's motion for summary judgment in its entirety and deny Base-Line's motion for summary judgment.

## BACKGROUND

Russo is the inventor and owner of U.S. Patent No. 6,258,446 ("'446 patent") entitled "Printing masking sheet and manufacturing method therefor." Printing

1

masking sheets are "sheets on which film is positioned in a precise location to be exposed to a printing plate to create a plate that can be used to print on a printing press." (Russo Decl. ¶ 3). Russo's patent claims in relevant part:

> Independent Claim 1: A printing masking sheet comprising:
>
> a printer's grade vinyl masking sheet;
>
> the sheet being opaque to ultraviolet light and permeable to visible light;
>
> the sheet being sized to overlie a printing plate;
>
> the sheet including an image area sized to overlie a usable area of the printing plate and a border adjacent to the image area sized to overlie an unusable area of the printing plate;
>
> the image area defining an image face overlying the usable area of the printing plate;
>
> a grid overlying and adhered to the image face of the sheet;
>
> the grid being formed of a quick drying ink.
>
> Dependant Claim 2: The printing masking sheet of claim 1 wherein the vinyl is orange.
>
> Dependant Claim 7: The printing masking sheet of claim 1 wherein the grid is formed by oil based ink formulated for use in an offset printing press.

Dependant Claim 8: The printing masking sheet of claim 2 wherein the grid is formed by oil based ink formulated for use in an offset printing press.

U.S. Patent No. 6,258,446. The effective filing date of the '446 patent is December 11, 1995, and the patent was issued on July 10, 2001.

According to Russo, prior to his invention, there was a need in the printing industry for a masking sheet that was durable, did not stretch or shrink, and that had an overlaid grid for accurately positioning images. Russo claims that in 1994 he began to work on developing a solution to this problem. According to Russo, the most significant obstacle that he had to overcome was finding a way to properly print the grid on vinyl masking sheets because ink does not readily dry on vinyl. Russo claims that he had to experiment with many different inks before identifying an oil-based ink that would dry on vinyl quickly enough so that the sheets could be printed on a sheet-fed offset printing press.

Upon issuance of the '446 patent in 1995, Russo contends that he told Base-Line about the newly patented product and provided samples. Russo further claims, and Base-Line does not dispute, that Base-Line said nothing at that time about printed vinyl masking sheets that were already available on the market. In 1998, Base-Line introduced a line of printed vinyl masking sheets featuring oil-based-ink grids which Russo alleges infringe his '446 patent. Russo brought action in this court on October 15, 2002, alleging infringement over claims 1, 2, 7 and 8 of the

'446 patent.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir.2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

Russo and Base-Line have both moved for summary judgment on the issue of whether the '406 patent is valid. Pursuant to 35 U.S.C. § 282, a patent is presumed to be valid and "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282. The presumption of validity "can be overcome only by facts supported by clear and convincing evidence to the contrary. . . ." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962-63 (Fed. Cir. 2002). The party asserting that a patent is invalid bears "[t]he burden of establishing invalidity of a patent or any claim thereof. . . ." 35 U.S.C. § 282.

In Base-Line's answer to the second amended complaint, Base-Line asserts defenses based upon 35 U.S.C. §§ 102, 103, and 112. Russo asserts that the court may find as a matter of law in its favor that none of the defenses are meritorious.

Base-Line argues that the court can find as a matter of law that the '406 patent is invalid pursuant to the "on-sale" bar provision in 35 U.S.C. § 102(b).

## I. Defenses Under 35 U.S.C. § 102

Russo argues that Base-Line cannot prevail under the defenses listed in 35 U.S.C. § 102 ("Section 102") which provides in part the following:

> A person shall be entitled to a patent unless--
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or . . . .

35 U.S.C. § 102(a) &(b).

### A. Anticipation and Public Use Defenses

Russo argues in his motion that Base-Line cannot prevail under the anticipation provision of 35 U.S.C. § 102(a) or the "public use" provision of 35

U.S.C. § 102(b). In regards to Base-Line's defenses under 35 U.S.C. § 102(a) and the "public use" provision of 35 U.S.C. § 102(b), Base-Line did not respond at all to Russo's arguments in support of Russo's summary judgment motion. Further, in Base-Line's answer to Russo's motion for summary judgment, Base-Line merely referred the court to the arguments in Base-Line's own motion for summary judgment. Base-Line's motion for summary judgment is solely based upon the "on sale" bar in Section 102(b). Base-Line has not pointed to sufficient evidence that would support the applicability of 35 U.S.C. § 102(a) or the "public use" provision of 35 U.S.C. § 102(b).

Base-Line also fails to properly dispute the "public use" issue and makes certain admissions pursuant to Local Rule 56.1. Pursuant to Local Rule 56.1, when a party files a motion for summary judgment each party must prepare a statement of material facts and each party is required to respond to the opposing party's statement of material facts and either admit or deny each fact. A denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000)(stating in addition that "[t]he purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument."). Pursuant to Rule 56.1, any facts included in a party's statement of facts that are not properly

denied by the opposing party are deemed to be admitted. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1. *See also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). A court is not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir. 1994). Further, the 7th Circuit has held that "that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)(stating in addition that "[s]ubstantial compliance is not strict compliance.").

Russo asserts in his statement of material facts that there are no facts that show that Base-Line's alleged making or selling of the printed vinyl sheets prior to Russo's patent application was "known to the public" or that Russo "disclosed to the public how to make such masking sheets." (SF 11). Base-Line disputes this point, but fails to properly cite to any supporting evidence. Base-Line refers the court generally to its motion for summary judgment which is not evidence and Base-Line refers the court generally to the declaration of Anne Logman ("Logman") and the accompanying exhibits without providing any page numbers. Such vague references to documents which would require the court to "scour the record" are exactly the

8

type of responses that Local Rule 56.1 renders insufficient. *Waldridge*, 24 F.3d at 922. Thus, Base-Line also admits pursuant to Local Rule 56.1 that even if it had made or sold the masking sheets prior to Russo's patent application, Base-Line did not make such production known to the public and did not make known to the public how to make such sheets.

### B. "On Sale" Bar

Russo and Base-Line each argue that the court may find in their favor as a matter of law on whether or not Base-Line can prevail under the "on sale" bar provision of 35 U.S.C. § 102(b). The "on sale" bar promotes "the policy of allowing the inventor a reasonable amount of time to ascertain the commercial value of an invention, while requiring prompt entry into the patent system after sales activity has begun." *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 98 F.3d 1318, 1322-23 (Fed. Cir. 1996)(stating that "[t]he law of § 102(b) is an implementation of the policy that if a patent is to be sought it must be applied for within a reasonable time after a completed invention has been placed in commerce. . .[and that] [i]t is well recognized that an inventor's development of new technology may overlap with the ascertainment of market interest; indeed, market development often accompanies technical development, particularly in the latter phases of completion of an invention.").

For the "on sale" bar defense, the party asserting invalidity must establish:

that "(1) there was a 'commercial offer'; and (2) that offer was for the patented invention." *Sparton Corp. v. U.S.*, 399 F.3d 1321, 1323 (Fed. Cir. 2005). The party asserting invalidity also must show that the invention was "'ready for patenting' prior to the critical date . . . [and] [a]n invention is ready for patenting if it was 'reduc[ed] to practice before the critical date; or [if] prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.'" *Honeywell Intern. Inc. v. Hamilton Sundstrand Corp*, 370 F.3d 1131, 1145 (Fed. Cir. 2004). *See also SmithKline Beecham Corp.*, 365 F.3d at 1317(stating that the "on sale" bar serves to bar an infringement claim "where, before the critical date, the invention was ready for patenting and was used by a person other than the inventor who is under no confidentiality obligation."). The determination regarding the validity "of a patent due to public use under § 102(b) is a question of law based on underlying questions of fact." *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306, 1316 (Fed. Cir. 2004). The party asserting patent invalidity bears the burden of pointing to "facts supporting the claim that a patent is invalid in view of an on-sale bar" sufficient to prove invalidity "by clear and convincing evidence." *Poly-America, L.P. v. GSE Lining Technology, Inc.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004). In evaluating the underlying facts for the "on sale" bar, the trier of fact will need to consider issues such as: 1) "whether the invention was completed and known to work for its intended purpose, or whether the inventor was continuing to develop

and evaluate the invention," and 2) "whether the inventor was merely exploring the market, or had made an unconditional offer to sell a completed invention." *Seal-Flex, Inc*, 98 F.3d at 1324. If the facts surrounding the above issues are genuinely in dispute, "summary disposition is negated." *Id.* Generally, the "on sale" bar accrues from the date "when a completed invention is offered for sale." *Id.*

The critical date in this action, which as explained above is one year prior to the date of the application for patent, is December 11, 1994. December 11, 1994 is well after the date in 1992 when Base-Line claims that it manufactured and sold masking sheets that allegedly anticipated the '446 patent. To support this claim, Base-Line points primarily to the testimony of its Pressman Larry Welker ("Welker") as well as Logman, Base-Line's former manager of operations. For corroborative evidence, Base-Line also produced a July 6, 1992, letter from Base-Line to customer A.B. Dick and an invoice of an alleged sale dated January 21, 1993, and a January 18, 1993 fax from Logman to A.B. Dick regarding a potential sale of masking sheets.

Russo responds that Base-Line has not satisfied its burden of proving by clear and convincing evidence that Base-Line's alleged sale to A.B. Dick constituted an "on sale" bar under Section 102(b) because Base-Line relies mainly on oral testimony. Russo asserts that Base-Line lacks corroborative evidence to support this oral testimony, and in particular, that Base-Line's corroborating evidence does not prove that Base-Line's 1993 masking sheets used "quick drying" ink which Russo

11

contends is an essential element of the '446 patent.

The Federal Circuit has repeatedly stated that a party claiming its "own prior inventorship must proffer evidence corroborating [its] testimony." *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001);*see also Finnigan Corp. v. International Trade Com'n*, 180 F.3d 1354, 1366 (Fed. Cir. 1999)(stating that "[t]he law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony"). Oral testimony proffered to invalidate a patent is generally insufficient in light of "the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury." *Id.* at 1366 (quoting *The Barbed-Wire Patent*, 143 U.S. 275, 284 (1892)). Particularly when an interested party has "prodded" the "memories" of witnesses in an attempt to illicit favorable testimony for the interested party, "such testimony rarely satisfies the burden upon the interested party, usually the accused infringer, to prove invalidity by clear and convincing evidence." *Finnigan Corp.*, 180 F.3d at 1366. The interested party must offer corroborating evidence "regardless whether the party testifying concerning the invalidating activity is interested in the outcome of the litigation (*e.g.*, because that party is the accused infringer) or is uninterested but testifying on behalf of an interested party." *Id.*

The Federal Circuit has indicated that "[d]ocumentary or physical evidence

12

that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." *Sandt Technology, Ltd.*, 264 F.3d at 1350-51. In addition, circumstantial evidence regarding "the inventive process, alone, may also" provide sufficient corroboration and "oral testimony of someone other than the alleged inventor may corroborate an inventor's testimony." *Id.* However, oral testimony given during the "post-invention" phase is subject to suspicion because "[i]n contrast to contemporaneous documentary evidence,... there is more of a risk that the witness may have a litigation-inspired motive to corroborate the inventor's testimony, and that the testimony may be inaccurate." *Id.*

The Federal Circuit has provided the following list of factors to consider when determining "whether a witness' testimony provides sufficient corroboration: 1) the relationship between the corroborating witness and the alleged prior user; 2) the time period between the event and trial; 3) the interest of the corroborating witness in the subject matter in suit; 4) contradiction or impeachment of the witness' testimony; 5) the extent and details of the corroborating testimony; 6) the witness' familiarity with the subject matter of the patented invention and the prior use; 7) probability that a prior use could occur considering the state of the art at the time; and 8) impact of the invention on the industry, and the commercial value of its practice." *Id.*

Welker and Logman are not neutral observers without an interest in the outcome of the instant action. As recently as September of 2003, when Welker first

13

provided a declaration in the instant action, Welker indicated that he was the lead pressman at Base-Line. (Welker Sept. 2003 decl. Par. 2). Logman is Base-Line's former manager of operations. (Base SJ reply 1). Thus, Welker and Logman may have loyalties to Base-Line that draws into question the accuracy of their testimony.

Also, in regards to Welker's testimony, Welker has submitted contradictory testimony. For example, in September of 2003 Welker stated in a declaration the following: "From the time [Base-Line] began producing pre-printed orange vinyl masking sheets in 1992 through January 2004, Base-Line has used Boltraron 4004 orange vinyl as the printing stock for its orange vinyl masking sheets." (Welker Decl. Sept. 2003 Par. 6). However, when Welker was subsequently questioned during his deposition and asked: "What is Boltraron 4004?," Welker responded "I have no idea." (Welker dep. 16). Despite Base-Line's contention that Welker's knowledge of trademarks and model numbers is irrelevant for the issue at hand, Welker undeniably contradicted himself.

In addition, in the instant action neither Base-Line's letter nor its corresponding invoice shows what kind of ink was used in the '92-'93 sale to A. B. Dick. Base-Line has pointed to evidence such as an engineering drawing of a masking sheet, a shipping invoice, a sales summary, and other documents. However, none of the documents specify the type of ink or the method used to print on the masking sheets. Such documentary evidence does not corroborate the assertions made orally by Base-Line's witnesses concerning the ink used and methods used

14

prior to Russo's patent application starting in 1992.

In regards to the "on sale" bar, Base-Line has made certain admissions pursuant to Local Rule 56.1. In response to Russo's statement of facts number 11 through 13, Base-Line fails to specifically point to any evidence that would support Base-Line's position that such facts are legitimately disputed. Such facts are thus deemed undisputed facts. Base-Line also did not dispute Russo's statement of additional material facts and Base-Line thereby admits pursuant to Local Rule 56.1 that "prior to 1998 Baseline had not determined how to successfully print on vinyl masking grids." ( R SAF 1). Base-Line also admits that the July 6, 2002 letter referred to by Base-Line did not provide a sale price. ( R SAF 3). These admissions, pursuant to Local Rule 56.1, also support summary judgment in Russo's favor on the "on sale" bar defense. Therefore, we grant Russo's motion for summary judgment in regards to all of the defenses under section 102 and we deny Base-line's motion for summary judgment on the "on sale" bar defense.

## II. Insufficiency For Obviousness Under 35 U.S.C. § 103

Russo argues that he is entitled as a matter of law to a finding that Base-Line cannot prevail under the insufficiency for obviousness defense of 35 U.S.C. § 103 ("Section 103") because the evidence pointed to by Base-Line, is insufficiently corroborated to invalidate the patent. Section 103 provides the following:

A patent may not be obtained though the invention is not identically disclosed

or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a). Base-Line argues that Russo's motion for summary judgment on the Section 103 defense is moot since Russo limits his discussion of the defense to Claim 5 and there is no case or controversy as to Claim 5 because it is not one of the claims at issue. However, Base-Line is merely attempting to avoid summary judgment by clouding the issues. Base-Line contends in its answer to Russo's motion for summary judgment that Base-Line will present evidence in regards to the Section 103 defense on Claims 1, 2, 7, and 8 of the '446 patent. However, Base-Line was asked by Russo in an interrogatory, on September 3, 2004, to list the bases for Base-Line's Section 103 defense and Base-Line did not provide an answer in regards to the Section 103 defense. Base-Line cannot now, after the close of discovery, and in the midst of dispositive motions, change the playing field in an attempt to gain an advantage by surprise. We shall not allow such tactics. Base-Line has failed to offer any substantive argument as to why there is a legitimate dispute of material fact in regards to the Section 103 defense and we find that no reasonable trier of fact could find in favor of Base-Line in regards to the Section 103

defense. Therefore, we grant Russo's motion for summary judgment in regards to the Section 103 defense.

III. Invalidity Due to Indefiniteness Under 35 U.S.C. § 112 ¶ 2

Russo also seeks summary judgment on Base-Line's defense based upon the indefiniteness defense under 35 U.S.C. § 112 ¶ 2 ("Section 112 ¶ 2). Section 112 ¶ 2 provides that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2. Base-Line argues as a defense in this action that the term "quick drying ink" in the patent is indefinite, and thus the patent should be held invalid. To satisfy the requirement imposed by Section 112 ¶ 2, "the claim, read in light of the specification, must apprise those skilled in the art of the scope of the claim." *SmithKline Beecham*, 365 F.3d at 1312 - 1314; *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870, 875 (Fed. Cir. 1993). There is no requirement that claims "be plain on their face in order to avoid condemnation for indefiniteness. . . ." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Rather, the claims must be "amenable to construction, however difficult that task may be." *Id.*; *SmithKline Beecham*, 365 F.3d at 1314. An indefiniteness determination "does not depend on a potential infringer's ability to ascertain the nature of its own accused product to determine infringement, but instead on whether the claim delineates to a skilled artisan the bounds of the

17

invention." *SmithKline Beecham*, 365 F.3d at 1315.

In the instant action, it is clear that a person of ordinary skill in the art would be able to discern, "in light of the specification," what is meant by the term "quick drying ink" in the '406 patent. The specification states at one point the following:

> The grid is preferably printed with a relatively quick drying ink which readily adheres to the masking sheet material. One such relatively quick drying ink is a rubber based ink such as Pro-Dry Ink which is commercially available from the Pro-Line Printing Ink Corp. of Phoenix, Ariz. Another such relatively quick drying ink is an oil based ink which may be obtained from Cardinal Colors Inc. of Chicago Ill.

U.S. Patent No. 6,258,446. A few paragraphs later, the specification continues with the following:

> Vinyl is a difficult material on which to print. Selection of the ink which is used to form the grid on a vinyl sheet is critical to manufacturing an acceptable masking sheet. *The ink must be selected specifically to durably adhere to vinyl and for use with the printing press which will print the grid on the vinyl.* For example, the rubber based ink identified above has been found to work well with a Hamada Model 880 offset press. The oil based ink identified above has been found to work well with larger presses such as a 29' Harris press, Man Roland press, Ryobi press, ATF Chief press, etc.

U.S. Patent No. 6,258,446 (emphasis added). Russo additionally answered in an interrogatory that sheets are covered by overlying sheets in less than a second, which implies a "typical commercial rate" of at least one sheet per second.

A person of ordinary skill in the art would have some idea of what a "typical commercial rate" of production is consistent with that disclosed in Russo's interrogatory. The person would also understand, particularly after reading the '446 patent, that "[v]inyl is a difficult material on which to print." U.S. Patent No. 6,258,446. She would lastly understand that the ink had to dry quickly enough "for use with the printing press which will print the grid on the vinyl." U.S. Patent No. 6,258,446. Therefore, the claim term "quick drying ink," "read in light of the specification," properly apprises one "skilled in the art of the scope of the claim." *SmithKline Beecham*, 365 F.3d at 1312-1314. Since this language sufficiently apprises one of ordinary skill in the art of the scope of the claim, the '446 patent is not invalid for indefiniteness under § 112 ¶ 2. Therefore, we grant Russo's motion for summary judgment on patent validity in regards to the indefiniteness defense.

## CONCLUSION

Based on foregoing analysis, we deny Base-Line's motion for summary judgment on the issue of patent invalidity and we grant Russo's motion for summary

judgment motion on the issue of patent invalidity in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 30, 2005